**In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 No. 88:**

John S. OUTCELT, Petitioner,

v.

**Douglas BRUCE and Jeffrey Wright, Respondents,**

and

**Victoria Buckley, Rebecca Lennahan and Richard Westfall, Title Board. (Four Cases)**

**In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 No. 89:**

**In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 No. 91:**

**In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 No. 92:**

**Nos. 98SA211, 98SA212, 98SA230, 98SA231.**

Supreme Court of Colorado,
En Banc.

June 29, 1998.

Susan E. Burch, Denver, for Petitioner.

Douglas Bruce, pro se, Colorado Springs.

Jeffrey Wright, pro se, Colorado Springs.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Title Board.

PER CURIAM.

KOURLIS, J., dissents, and MARTINEZ, J., joins in the dissent.

John Outcelt, a registered elector in the State of Colorado, challenges the actions of the initiative title setting board (the Board) in setting the title, ballot title and submission clause (collectively, the title), and summary for the proposed initiatives designated 1997–98 # 88 (Initiative # 88), 1997–98 # 89 (Initiative # 89), 1997–98 # 91 (Initiative # 91),

and 1997–98 # 92 (Initiative # 92).[1] Each initiative would amend article X, section 20, of the Colorado Constitution.[2]

On May 6, 1998, the Board set the title and summary for Initiative # 88 and Initiative # 89 at a hearing where the Board considered the proposed initiatives. On May 13, 1998, Outcelt filed motions for rehearing. The Board subsequently denied Outcelt's motions for rehearing on May 20, 1998.

On May 20, 1998, the Board set the title and summary for Initiative # 91 and Initiative # 92 at a hearing where the Board considered the proposed initiatives. On May 27, 1998, Outcelt filed motions for rehearing. The Board subsequently denied Outcelt's motions for rehearing on May 29, 1998.

Pursuant to section 1–40–107(2), 1 C.R.S. (1997), Outcelt then sought this court's review of the Board's actions. Because Initiatives # 88, # 89, # 90, and # 91 are nearly identical, we consolidated our review of the Board's actions for both initiatives.

## I.

In two recent opinions, we held that initiatives similar to the ones we consider here contained multiple subjects and therefore violated article 5, section 1(5.5), of the Colorado Constitution. *See In re 1997–98 # 84, # 85*, Nos. 98SA147, 98SA148, 961 P.2d 456 (Colo. June 8, 1998); *In re 1997–98 # 86, # 87*, 962 P.2d 245 (Colo.1998). The initiatives now before us contain slightly different tax cuts from the tax cuts we considered in these two prior cases. Nevertheless, the multiple subject violations that we discussed in *In re 1997–98 # 84, # 85* and *In re 1997–98 # 86, # 87*—i.e., the initiatives impermissibly contained both tax cuts and mandatory reductions in state spending on state programs—are identical to the multiple subject violations in Initiatives # 88, # 89, # 90, and # 91. Accordingly, the Board erred in set-

ting the title, ballot title and submission clause, and summary for the initiatives. We remand this matter to the Board with directions to strike the title, ballot title and submission clause, and summary for Initiatives # 88, # 89, # 91, and # 92 and to return the initiatives to the proponents.

Justice KOURLIS dissents, for the reasons stated in the dissenting opinions in *In re 1997–98 # 84, # 85* and *In re 1997–98 # 86, # 87*, and Justice MARTINEZ joins in the dissent.

## APPENDIX A

PROPOSED INITIATIVE "1997–98 # 88"

The text of the initiative is as follows:

Article X, section 20, of the Taxpayer's Bill of Rights, is amended to add:

(8)(d) A $20 tax cut, increased $30 the next year and then $50 yearly (to $100, $150 . . . ), shall lower each 1999 and later district tax bill for each: utility customer sales, use, and franchise tax; vehicle ownership tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authorities, economic development, human and health services, elections, jails, libraries, courts, schools, and district attorney, assessor, public relations, personnel, legal, financial, and administrative offices combined; property tax equal to the yearly cost of lease-purchases, tax-increment financing, property tax credits and rebates not for uniform refunds of excess or illegal revenue or from overassessment, and school debt; and remaining business personal property tax. The state shall replace affected local revenue monthly within all tax and spending limits, and audit each limit yearly; legal fees and costs to enforce (8)(d) *shall*

---

**1.** The text of the initiative, title, ballot title and submission clause, and summary of Initiative # 88 are attached hereto as APPENDIX A. The text of the initiative, title, ballot title and submission clause, and summary of Initiative # 89 are attached hereto as APPENDIX B. The text of the initiative, title, ballot title and submission clause, and summary of Initiative # 91 are attached hereto as APPENDIX C. The text of the initiative,

title, ballot title and submission clause, and summary of Initiative # 92 are attached hereto as APPENDIX D.

**2.** Article X, section 20, of the Colorado Constitution is entitled "The Taxpayer's Bill of Rights" and is commonly known as Amendment 1.

 *always* be awarded to successful plaintiffs only; and once a year, the general assembly may delay for one year all or part of the next year's increase in one or more tax cuts, but only if further tax cut or replacement amounts in that next year will leave total remaining state revenue from all sources growing less than $200 million.

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $20 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $30 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $20 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $30 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $20 tax cut, increased $30 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer sales, use, and franchise tax; vehicle ownership tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authorities, economic development, human and health services, elections, jails, libraries, courts, schools, and district attorney, assessor, public relations, personnel, legal, financial, and administrative offices combined; property tax equal to annual payments for lease-purchases, tax-increment financing, property tax credits and rebates that are not for uniform refunds of excess or illegal revenues or from overassessment, and school debt; and remaining business personal property tax. The initial tax cut of $20 is applied to tax bills for tax year 1999.

The state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are always awarded to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

State impacts. The state income tax cut would reduce the growth in state general fund revenue by $166,310,300 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998–99 would be as follows:

* Vehicle ownership taxes—$337,310,000
* Property tax for specific services—at least $971,494,000
* Business personal property tax—$42,-800,000

The state would also incur costs to replace local government revenue losses for utility customer sales, use, and franchise taxes and other property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,519,014,300 during the three-year period beginning with fiscal year 1998–99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

Local impacts. This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible accounting and audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned May 6, 1998 2:55 p.m.

Rehearing, May 20, 1998

　* John S. Outcelt Motion denied. Hearing adjourned 7:40 p.m.

## APPENDIX B

### PROPOSED INITIATIVE NUMBER "1997–98 # 89"

The text of the initiative is as follows:

Article X, section 20, of the Taxpayer's Bill of Rights, is amended to add:

(8)(d) A $20 tax cut, increased $30 the next year and then $50 yearly (to $100, $150 ... ), shall lower each 1999 and later district tax bill for each: utility customer sales, use, and franchise tax; vehicle ownership tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authorities, economic development, human and health services, elections, jails, libraries, courts, schools, and district attorney, assessor, public relations, personnel, legal, financial, and administrative offices combined; property tax equal to the yearly cost of lease-purchases, tax-increment financing, property tax credits and rebates not for uniform refunds of excess or illegal revenue or from overassessment, and school debt; and remaining business personal property tax. The state shall, to the extent allowed by the supreme court, replace affected local revenue monthly within all tax and spending limits, and audit each limit yearly; legal fees and costs to enforce (8)(d) *shall always* be awarded to successful plaintiffs only; and once a year, the general assembly may delay for one year all or part of the next year's increase in one or more tax cuts, but only if further tax cut or replacement amounts in that next year will leave total remaining state revenue from all sources growing less than $200 million.

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $20 TAX CUT TO LOWER EACH 1999

STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $30 THE NEXT YEAR AND $50 YEARLY THERE-AFTER; TO THE EXTENT ALLOWED BY THE COLORADO SUPREME COURT, REQUIRING MONTHLY STATE RE-PLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPEND-ING LIMITS AND YEARLY STATE AU-DITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $20 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUS-TOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECI-FIED PROPERTY TAX, AND, IN CON-NECTION THEREWITH, INCREASING THE TAX CUT $30 THE NEXT YEAR AND $50 YEARLY THEREAFTER; TO THE EXTENT ALLOWED BY THE COL-ORADO SUPREME COURT, REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIM-ITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAIN-ING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $20 tax cut, increased $30 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer sales, use, and franchise tax; vehicle owner-ship tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authori-ties, economic development, human and health services, elections, jails, libraries, courts, schools, and district attorney, asses-sor, public relations, personnel, legal, finan-cial, and administrative offices combined; property tax equal to annual payments for lease-purchases, tax-increment financing, property tax credits and rebates that are not for uniform refunds of excess or illegal reve-nues or from overassessment, and school debt; and remaining business personal prop-erty tax. The initial tax cut of $20 is applied to tax bills for tax year 1999.

To the extent allowed by the Colorado supreme court, the state is required to re-place monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are always awarded to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if fur-ther increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

State impacts. The state income tax cut would reduce the growth in state general fund revenue by $166,310,000 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility custom-er tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998-99 would be as follows:

* Vehicle ownership taxes—$337,310,000

* Property tax for specific services—at least $971,494,000

* Business personal property tax—$42,-800,000

The state would also incur costs to replace local government revenue losses for utility customer sales, use, and franchise taxes and other property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,519,014,300 during the three-year period beginning with fiscal year 1998-99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

Local impacts. This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible accounting and audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned May 6, 1998 2:55 p.m.

Rehearing, May 20, 1998

* John S. Outcelt Motion denied.

Hearing adjourned 7:40 p.m.

PROPOSED INITIATIVE NUMBER
"1997–98 # 91"

The text of the initiative is as follows:

Article X, section 20, of the Taxpayer's Bill of Rights, is amended to add:

(8)(d) A $50 tax cut, increased $50 yearly (to $100, $150 . . . ), shall lower each 1999 and later district tax bill for each: utility customer sales, use, and franchise tax; vehicle ownership tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authorities, economic development, human and health services, elections, jails, libraries, courts, schools, and district attorney, assessor, public relations, personnel, legal, financial, and administrative offices combined; property tax equal to the yearly cost of lease-purchases, tax-increment financing, property tax credits and rebates not for uniform refunds of excess or illegal revenue or from overassessment, and school debt; and remaining business personal property tax. The state shall replace affected local revenue monthly within all tax and spending limits, and audit each limit yearly; legal fees and costs to enforce (8)(d) *shall always* be awarded to successful plaintiffs only; and once a year, the general assembly may delay for one year all or part of the next year's increase in one or more tax cuts, but only if further tax cut or replacement amounts in that next year will leave total remaining state revenue from all sources growing less than $200 million.

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $50 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL

REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $50 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $50 tax cut, increased $50 each year thereafter, would lower each state and local tax bill for each utility customer sales, use, and franchise tax; vehicle ownership tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authorities, economic development, human and health services, elections, jails, libraries, courts, schools, and district attorney, assessor, public relations, personnel, legal, financial, and administrative offices combined; property tax equal to annual payments for lease-purchases, tax-increment financing, property tax credits and rebates that are not for uniform refunds of excess or illegal revenues or from overassessment, and school debt; and remaining business personal property tax. The initial tax cut of $50 is applied to tax bills for tax year 1999.

The state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are always awarded to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

State impacts. The state income tax cut would reduce the growth in state general fund revenue by $352,004,000 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998–99 would be as follows:

* Vehicle ownership taxes—$593,920,000
* Property tax for specific services—at least $1,475,181,600
* Business personal property tax—$87,233,000

The state would also incur costs to replace local government revenue losses for utility customer sales, use, and franchise taxes and other property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this

measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $2,509,438,600 during the three-year period beginning with fiscal year 1998–99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

Local impacts. This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible accounting and audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned May 20, 1998 3:05 p.m.

Rehearing, May 29, 1998

* John S. Outcelt Motion denied. Hearing adjourned 3:27 p.m.

### APPENDIX D

### PROPOSED INITIATIVE NUMBER "1997–98 # 92"

The text of the initiative is as follows:

Article X, section 20, of the Taxpayer's Bill of Rights, is amended to add:

(8)(d) A $50 tax cut, increased $50 yearly (to $100, $150 ... ), shall lower each 1999 and later district tax bill for each: utility customer sales, use, and franchise tax; vehicle ownership tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authorities, economic development, human and health services, elections, jails, libraries, courts, schools, and district attorney, assessor, public relations, personnel, legal, financial, and administrative offices combined; property tax equal to the yearly cost of lease-purchases, tax-increment financing, property tax credits and rebates not for uniform refunds of excess or illegal revenue or from overassessment, and school debt; and remaining business personal property tax. The state shall, to the extent allowed by the supreme court, replace affected local revenue monthly within all tax and spending limits, and audit each limit yearly; legal fees and costs to enforce (8)(d) *shall always* be awarded to successful plaintiffs only; and once a year, the general assembly may delay for one year all or part of the next year's increase in one or more tax cuts, but only if further tax cut or replacement amounts in that next year will leave total remaining state revenue from all sources growing less than $200 million.

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $50 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $50 YEARLY THEREAFTER; TO THE EXTENT ALLOWED BY THE COLORADO SUPREME COURT, REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $50 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $50 YEARLY THEREAFTER; TO THE EXTENT ALLOWED BY THE COLORADO SUPREME COURT, REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $50 tax cut, increased $50 each year thereafter, would lower each state and local tax bill for each utility customer sales, use, and franchise tax; vehicle ownership tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authorities, economic development, human and health services, elections, jails, libraries, courts, schools, and district attorney, assessor, public relations, personnel, legal, financial, and administrative offices combined; property tax equal to annual payments for lease-purchases, tax-increment financing, property tax credits and rebates that are not for uniform refunds of excess or illegal revenues or from overassessment, and school debt; and remaining business personal property tax. The initial tax cut of $50 is applied to tax bills for tax year 1999.

To the extent allowed by the Colorado supreme court, the state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are always awarded to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

State impacts. The state income tax cut would reduce the growth in state general fund revenue by $352,004,000 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue loss during the three-year period beginning with fiscal year 1998–99 would be as follows:

* Vehicle ownership taxes—$593,920,000
* Property tax for specific services—at least $1,475,181,600
* Business personal property tax—$87,233,000

The state would also incur costs to replace local government revenue losses for utility customer sales, use, and franchise taxes and other property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $2,509,438,600 during the three-year period beginning with fiscal year 1998–99.

The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure, and the Supreme Court does not disallow any state reimbursement of local revenue impact.

Local impacts. This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible accounting and audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned May 20, 1998 3:05 p.m.

Rehearing, May 29, 1998

* John S. Outcelt Motion denied.

Hearing adjourned 3:27 p.m.

